# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**, | : |
| | : Case No. 2: 03-cv-326 |
| Plaintiff, | : |
| v. | : Judge Holschuh |
| | : Magistrate Judge Abel |
| **SIERRA BROKERAGE SERVICES, INC., et al.**, | : |
| Defendants. | : |

## Memorandum Opinion and Order

Plaintiff, the United States Securities and Exchange Commission ("SEC"), brings this action alleging that Defendants, eight individuals and four entities,[1] engaged in price manipulation, unregistered sales, unreported stock ownership as well as various other securities violations in connection with the reverse merger of BluePoint Linux Software Corporation ("BluePoint") and MAS Acquisition XI Corporation ("MAS XI"). This matter is currently before the Court on Defendant Aaron Tsai's "motion for reargument of the order of the District Court overruling Defendant's objections to the order of the Magistrate Judge regarding the crime-fraud exception to the attorney-client privilege." (Doc. # 147).

---

[1]Defendants include: (1) Sierra Brokerage Services, Inc., (2) Richard Geiger, (3) Jeffrey A. Richardson, (4) Aaron Tsai, (5) Michael M. Markow, (6) Global Guarantee Corporation, (7) Francois Goelo, (8) Yongzhi Yang, (9) K&J Consulting, Limited, (10) Ke Luo, (11) M&M Management, Limited, and (12) Jerome B. Armstrong.

I. Background

    A. Facts

Defendant Aaron Tsai incorporated MAS XI, a shell company with no revenues or earnings from operations, in October, 1996. (Declaration of Defendant Aaron Tsai, (Doc. # 65), at ¶¶ 6, 8). Tsai notes that MAS XI's sole purpose was to locate and consummate a reverse merger. (Tsai Dec. at ¶ 8). Tsai was the President and controlling shareholder of MAS XI. (Id. at ¶ 7). MAS XI initially issued 8,500,000 shares of restricted stock to Tsai.[2] (Id.). In 1999, Tsai disclosed his controlling interest in MAS XI to the SEC and voluntarily made MAS XI a reporting company under the Securities Exchange Act of 1934 by filing, *inter alia*, a Form 10-SB. (Id.).

In January 1997, Tsai gifted 250,000 shares of his MAS XI stock to five of his friends in order to make the public shell company an attractive candidate for a prospective merger with a private company desiring to go public. (Id. at ¶ 9). Tsai purported to gift the 250,000 shares pursuant to Section 4(2) of the Securities Act of 1933. After gifting the 250,000 shares, the stock remained "restricted."

Tsai then engaged the assistance of Kensington Capital to help get the stock cleared for public sale on the Over-The-Counter Bulletin Board ("OTCBB").[3] To that end, Kensignton filed a Form 211 application with the National Association of Securities Dealers ("NASD"). (Exhibit G, attached to Declaration of Jarett B. Decker (attached to Doc. # 59)). On July 26, 1999, the

---

    [2]Pursuant to the Securities Act of 1933, restricted stock could not be offered for public sale except in accordance with Rule 144 of the Act.

    [3]In addition, Defendant Tsai completed and filed a Form 10-SB/A in which he stated that the directors who had been gifted the 250,000 shares were accredited investors.

NASD sent Kensington a letter indicating that MAS XI's Form 211 application was deficient because the tradable shares of MAS XI stock were too concentrated; the NASD letter inquired as to why 250,000 shares of MAS XI stock were held by only 5 individuals.  (Exhibit H, attached to Decker Dec. (Doc. # 59)).

Thereafter, Tsai used blank stock-certificate power forms signed by the 5 investors to transfer varying amounts of shares to other individuals.  In August 1999, Tsai arranged for the transfer of most of the 5 individuals' shares to 28 additional "friends, acquaintances or associates."  (Tsai Dec. at ¶ 9).  Tsai contends that he discussed MAS XI, its purpose as a shell company, the reverse merger process and the gifting of shares with each of the shareholders.  (Id. at ¶ 11).

Kensington then submitted a supplement to the Form 211 application indicating that MAS XI shares were now held by 33 individuals.  (Exhibit J, attached to Decker Dec. (Doc. # 59)).  This supplement was also returned as deficient.  (Exhibit M, attached to Decker Dec. (Doc. # 59)).  Kensington thereafter submitted an unsigned opinion letter, purportedly drafted by Florida attorney Arthur Schlenkert, to the NASD indicating that certain shares of MAS XI stock had become freely tradeable.  (Exhibit N, attached to Decker Dec. (Doc. # 59)).  The unsigned letter indicated that the opinion was based upon the information provided by MAS XI President Tsai, and Tsai's August 31, 1999 certification that was referenced in the letter as exhibit A. (Exhibit O, attached to Decker Dec. (Doc. # 59)).

Based on this information, the NASD cleared the MAS XI shares for trading on the OTCBB.  (Exhibit O, attached to Decker Dec. (Doc. # 59)).  MAS XI thereafter consummated a reverse merger with BluePoint.  As part of the reverse merger with BluePoint, the 33

3

shareholders of MAS XI received $100 each.  (Tsai Dec. at ¶ 13; Declaration of Michael M. Markow (Doc. # 69) at ¶ 4).  Tsai received $250,000.  (Markow Dec. at ¶ 4).

On November 26, 2001, the SEC served an investigative subpoena upon Tsai requesting: "[a]ll documents that relate directly or indirectly to issuance, distribution, trading, or other transfers or proposed transfers of securities issued by Bluepoint Linux Software Corp. or MAS Acquisition XI Corp.... [including] ... correspondence of any kind...." (Exhibit P, attached to Decker Dec. (Doc. # 59)).  Tsai, however, did not produce the Schlenkert letter relating to MAS XI.  Tsai explains that he did not have a copy of the Schlenkert letter and did not realize that it had been submitted to the NASD.

On July 2, 2004, Schlenkert was issued a subpoena that commanded him to produce any documents relating to the September 2, 1999 letter to the NASD and all documents relating to MAS XI and/or BluePoint.  (Exhibit R, attached to Decker Dec. (Doc. # 59)).  The SEC also subpoenaed Schlenkert for a July 20, 2004 deposition.  (Id.).  In a fax sent to the SEC on July 9, 2004, Schlenkert told the SEC that he did not prepare any documents for MAS XI and speculated that Tsai must have altered a document prepared for MAS VIII.  (Exhibit S, attached to Decker Dec. (Doc. # 59)).  On July 10, 2004, Schlenkert sent another fax to the SEC.  (Id.).  This time, Schlenkert explained that, while he had provided a draft opinion for MAS XI, he did not complete the opinion letter because Tsai had failed to provide complete information and because Tsai had failed to pay for his services.  (Id.).

After receiving the Schlenkert faxes, Jarett Decker, Delia Helpinstine, and Tracy Lo, all with the SEC, spoke with Schlenkert by telephone.  During this *ex parte* communication, counsel for Plaintiff discussed the faxes sent by Schlenkert and the work Schlenkert performed for Tsai's

4

companies, including MAS XI. (Exhibit 4, attached to <u>Defendant Aaron Tsai's Motion to Preclude</u>). At the direction of the Magistrate Judge, the conversation was memorialized in a September 15, 2004 letter. (<u>Id.</u>). Tsai contends that the faxes sent by Schlenkert, as well as all communications between Tsai and Schlenkert regarding legal advice, are protected by the attorney-client privilege and are otherwise confidential. Plaintiff, on the other hand, argues that Tsai's claims of privilege are defeated by application of the crime-fraud exception.

**B. Procedural History**

On April 11, 2003, Plaintiff filed this action against Defendants alleging various violations of the Securities Act. On September 2, 2004, Plaintiff filed a motion for a declaration that Defendant Aaron Tsai's claims of attorney-client privilege and confidentiality have been waived or do not apply. (Doc. # 59). On September 20, 2004, Defendant Tsai responded by filing a motion to preclude any confidential and/or privileged matters disclosed by attorney Schlenkert.[4] (Doc. # 62). The parties provided further briefing on this issue and, on October 8, 2004, a hearing was held before the Magistrate Judge. On November 17, 2004, the Magistrate Judge issued an order preliminarily denying Plaintiff's motion for a declaration, but reserved ruling on Plaintiff's argument that the crime-fraud exception to the attorney-client privilege applied. (<u>Order</u>, at p. 21 (November 23, 2004)). Both parties, in addition to several other Defendants, filed additional briefs and evidence regarding application of the crime-fraud exception to the attorney-client privilege. On February 14, 2005, the Magistrate Judge issued a second order concluding that the crime-fraud exception did apply.

---

[4]Defendant Tsai also sought to prevent Plaintiff from engaging in any further conversations or communications with attorney Schlenkert regarding confidential and/or privileged matters. (Doc. # 62).

Thereafter, on March 1, 2005, Defendant Tsai filed an objection to the Magistrate Judge's Order. On October 18, 2005, this Court affirmed the Magistrate Judge's Order. The Court first concluded that the Magistrate Judge's decision to decline further oral argument was not contrary to law. Memorandum Opinion and Order, at p. 9 (October 18, 2005). The Court then held that the Magistrate Judge did not err by failing to apply a preponderance of the evidence standard to determine whether Plaintiff had established a *prima facie* showing of fraud in violation of the Securities Act. Id. The Court also affirmed the Magistrate Judge's conclusion that Plaintiff had established a *prima facie* showing of fraud in violation of the Securities Act. Id., at pp. 11-12. Finally, the Court concluded that the Magistrate Judge's findings were sufficient to establish that a prudent person would have a reasonable basis to suspect that Tsai sought attorney Schlenkert's assistance with the intent to further the alleged fraud. Id., at p. 14.

## II. Discussion

### A. Standard

Defendant Tsai has moved the Court for "reargument" of the Court's earlier order affirming the Magistrate Judge's order. Defendant Tsai, however, has provided no authority for such "reargument." Defendant Tsai's motion appears to be similar to a motion to reconsider, which is analyzed under Rule 59 of the Federal Rules of Civil Procedure. See Huff v. Metropolitan Life Ins. Co., 675 F.2d 119, 122 (6th Cir. 1982); Smith v. Hudson, 600 F.2d 60, 62-63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979). The grant or denial of a Rule 59(e) motion is within the informed discretion of the Court. Huff, 675 F.2d at 122. Moreover, such a motion is an "extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." American Textile Mfrs. Institute, Inc. v. The Limited,

Inc., 179 F.R.D. 541, 547 (S.D. Ohio 1997).

"Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." GenCorp, Inc. v. American Intern. Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)(internal citations omitted).

**B. Application**

In this case, Defendant Tsai has not cited to an intervening change in controlling law. Additionally, Defendant Tsai has not identified any "newly discovered evidence." See GenCorp, Inc., 178 F.3d at 834 ("To constitute 'newly discovered evidence,' the evidence must have been previously unavailable"); Emmons v. McLaughlin, 874 F.2d 351, 358 (6th Cir. 1989)("It is well established, however, that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment").

Instead, Defendant Tsai's arguments appear to fall within either the "clear error of law" or "manifest injustice" categories. However, a majority of Defendant Tsai's motion for "reargument" is simply a regurgitation of arguments made prior to the Court's Memorandum Opinion and Order; Defendant Tsai cites extensively from his prior memorandum of law, as well as his reply, in support of his Objections to the Magistrate Judge's Order. Those arguments were properly considered by the Court and do not support a motion for "reargument." See McConocha v. Blue Cross and Blue Shield Mut. of Ohio, 930 F. Supp. 1182, 1184 (N.D. Ohio1996).

Defendant Tsai does, however, offer one new argument. Defendant Tsai argues that the

Court erred by not properly considering certain evidence when affirming the Magistrate Judge's decision to decline further oral argument. In particular, Defendant Tsai contends that footnote 5 of the Court's Memorandum Opinion and Order contains a misstatement of fact. Defendant argues that he did in fact attempt to strike Plaintiff's supplemental filings and requested further oral argument. In support of this position, Defendant cites to a letter sent to the Magistrate Judge pointing out that Plaintiff's supplemental filings were submitted without Court approval in violation of Local Civil Rule 7.2(a)(2) and requesting that those filings not be considered by the Court. (Exhibit A, attached to Defendant Tsai's Motion for Reargument). In the letter, Defendant also requested further oral argument if the Court had any doubt as to whether Plaintiff had met its burden. (Id.).

However, the fact remains that Defendant Tsai did not file a formal motion to strike, did not file a surreply, and did not specifically identify any argument or evidence that would have been presented in response to the "Fourth Declaration of Tracy Lo." Thus, as this Court previously concluded, "[i]t does not appear that Defendant Tsai was prevented from submitting evidence or argument to the Magistrate Judge." (Memorandum Opinion and Order, at p. 9 (October 18, 2005).

Defendant's motion for "re-argument" (Doc. # 147) is therefore **DENIED**.

**IT IS SO ORDERED.**

January 18, 2006  /s/ John D. Holschuh
John D. Holschuh, Judge
United States District Court